Decided 4 May, 1901.

### EX PARTE WYGANT.

## Wygant *v.* McLauchlan.

[54 L. R. A. 636;  64 Pac. 867.]

Cemeteries as Nuisances.

1.   A cemetery is not *per se* a nuisance, and whether it is so in a given case will depend upon local conditions.

Power of Municipality to Declare Nuisances.

2.   Under a charter authorizing a city to declare what shall constitute nuisances, it can not arbitrarily declare that to be a nuisance which is not so in fact or by statute, nor was so at common law; thus, under such a charter, a city can

not declare generally that the burial of a dead body in any portion of the city shall constitute a nuisance, when such interment might be made in certain sections thereof without giving offense to the senses or endangering the health of the community : *Grossman* v. *City of Oakland*, 30 Or. 478, applied; *City of Portland* v. *Terwilliger*, 16 Or. 465, explained.

MUNICIPAL ORDINANCES RELATING TO BURIALS.*

3. Under a charter conferring power to provide for the health, cleanliness, peace, and good order of the city, and to prevent and remove nuisances, a municipality may prescribe reasonable rules for the place and manner of burying the dead, and whether a given rule is reasonable is a question to be determined by the courts.

MUNICIPAL ORDINANCES—PRESUMPTION OF REASONABLENESS.

4. There is a presumption indulged that municipal ordinances are reasonable, and the burden of proof is on him who asserts otherwise.

JUDICIAL NOTICE OF MUNICIPAL CHARTERS.

5. Courts will take notice of the public laws incorporating cities and of the boundaries of such municipalities.

REASONABLENESS OF ORDINANCES PROHIBITING BURIALS.

6. Under a city charter authorizing a city to provide for the health, cleanliness, peace, and good order of the city, and to prevent and remove nuisances, an ordinance prohibiting burials in certain parts of the city which are distant from any inhabitants or any public thoroughfare, is unreasonable, and, being general in its territorial operation, is entirely void.

From Multnomah : ARTHUR L. FRAZER, Judge.

Petition by Cass Wygant against D. M. McLauchlan, as Chief of Police of the City of Portland, for a writ of habeas corpus. The plaintiff was convicted in the Municipal Court of the City of Portland of a violation of City Ordinance No. 9188, and sentenced to pay a fine of $35, in default of the payment of which he was committed to jail under a commitment issued, directed, and delivered to the defendant, McLauchlan, who is the chief of police. The complaint upon which the conviction was had charged the plaintiff with a violation of the ordi-

*NOTE.—See short note on Injunction Against a Cemetery Maintained by a City, in 23 L. R. A. at p. 303 ; *Matter of Bohen*, 36 L. R. A. 618, with briefs of counsel on the control of municipalities over burying grounds ; a note in 38 L. R. A. at p. 327 on the same subject; and a note in 41 L. R. A. 323.

The following are cases of injunction against further interments within a city except in certain specified places : *Austin* v. *Austin City Cem. Assoc.* 47 Am. St. Rep. 114 ; *Los Angles County* v. *Hollywood Cem. Assoc.* 71 Am. St. Rep. 75. A more sweeping case than any of these is *Lowe* v. *Propect Hill Cem. Assoc.* 46 L. R. A. 23.—REPORTER.

nance by wilfully and unlawfully interring and causing to be deposited a certain dead body within prohibited territory in the City of Portland, "thereby creating a nuisance," contrary to the ordinance, etc. The ordinance under which the complaint was drawn provides, by section 1, that it shall be unlawful, and it is declared a nuisance and misdemeanor, for any person or persons, at any time after the first day of April, 1895, to dig, or cause to be dug or opened, any grave, or to inter or deposit, or cause to be deposited, in such grave, any dead body, within the City of Portland, except within certain specified districts ; and, by section 2, that no person or persons shall, after the day named, dig, or caused to be dug or opened, any grave, or cause to be deposited or interred in such grave any dead body, except in those portions of the city designated in section 1. Section 6 prescribes a penalty for a violation of the ordinance. The charter empowers the city to prevent the introduction of contagious diseases, etc., and "to provide for the health, cleanliness, ornament, peace, and good order of the city," and, by a subsequent clause, "to prevent and remove nuisances, and to declare what shall constitute the same ": Section 32, subds. 6, 9. The plaintiff, being imprisoned, sued out a writ of habeas corpus, alleging that he is unlawfully restrained of his liberty by the defendant, to which the latter made return that he is lawfully detaining the plaintiff under and by virtue of the commitment to him issued and directed. The judgment being favorable to the plaintiff, the defendant appeals.                           Affirmed.

For appellant there was a brief over the names of *Joel M. Long*, City Attorney, and *Ralph R. Duniway*, with an oral argument by *Messrs. Duniway* and *John K. Kollock*.

For respondent there was a brief and an oral argument by Messrs. *Raleigh Stott, Whitney L. Boise,* and *Geo. C. Stout.*

Mr. Justice Wolverton, after stating the facts, delivered the opinion of the court.

1. The plaintiff bases his argument in support of the judgment of the circuit court upon the ground that Ordinance 9188 is invalid, for the reason that the charter does not authorize the City of Portland to declare the burial of the dead within the city limits, outside of the excepted districts, to be a nuisance, or to punish persons for doing the acts thereby declared to be offenses against the city. It may be premised that a cemetery is not a nuisance, except conditions be present which corrupt or foul the atmosphere by unwholesome or noxious stenches, or impregnate the water of wells or springs in the vicinity by percolation through the soil, thereby endangering the public health ; hence the authorities agree that it is not nor can it be regarded a nuisance *per se :* Wood, Nuis. § 6 ; 1 Dillon, Mun. Corp. (4 ed.) § 373 ; 5 Am. & Eng. Ency. Law (2 ed.), 791; *Kingsbury* v. *Flowers,* 65 Ala. 479 (39 Am. Rep. 14, and note); *Henry* v. *Trustees,* 48 Ohio St. 674 (30 N. E. 1122); *Town of Lake View* v. *Rose Hill Cem. Co.* 70 Ill. 191 (22 Am. Rep. 71). And whether the act of depositing a dead body in its place of sepulture is the commission of a nuisance depends entirely upon its proximity to the habitations of the living and the manner in which it is accomplished.

2. In so far as the language of the charter conferring power upon the city to declare what shall constitute a nuisance is involved by the contention, the case of *Grossman* v. *City of Oakland,* 30 Or. 478 (60 Am. St. Rep. 832, 41 Pac. 5, 36 L. R. A. 593), is precisely in point. . Within

the scope of the doctrine there announced and settled, the city is not thereby authorized to declare that to be a nuisance which is neither such *per se* nor under the common law, nor made so by statutory enactment. It would seem to follow, therefore, that the city council was not authorized to declare generally that to deposit a dead body in any portion on the inhibited district shall constitute a nuisance, when it is conceded, as here, that such an interment may be made in the usual way in some sections thereof, without giving offense to the senses of any human inhabitant, or endangering in the least measure the health of the community.

3. Defendant's counsel insist, however, that the authority requisite for excluding burials from within the city limits may be referable to the general police power incident to all municipal corporations, and, beyond this, it is urged that the words of the charter, "to provide for the health, cleanliness, ornament, peace, and good order of the city," are commensurate for the purpose. The power thus conferred is no doubt ample to authorize the city to adopt reasonable measures prescribing rules and regulations as it respects the place and manner of burials within the city limits; but the city can not arbitrarily prohibit them, unless such prohibition be a reasonable exercise of the power. The legislature, in its wisdom, may, by express delegation of authority, empower the city to adopt measures of a specified and defined character, and the exercise of such authority can not be questioned on the ground of its unreasonableness: *People ex rel.* v. *Pratt*, 129 N. Y. 68 (29 N. E. 7); *Cronin* v. *People*, 82 N. Y. 318 (37 Am. Rep. 564); *Coates* v. *Mayor, etc.* 7 Cow. 585,—are illustrative of the principle. In the first, the authority delegated was "to make, modify, and repeal

39 OR.— 28.

ordinances and by-laws to regulate the burial of the dead ;'' and it was held that the power to regulate was tantamount to the power to prohibit, the court referring to *Cronin* v. *People*, 82 N. Y. 318 (37 Am. Rep. 564), which involved the authority to prohibit the operation of slaughterhouses in certain portions of the City of Albany as conclusive of the point. So, in the last case cited, the authority extended to making by-laws "for regulating * * * or preventing the interment of the dead" within the city, which language is so express and explicit as to leave no doubt touching the power to prohibit. But where the authority to adopt specific measures is referable merely to the general power, or where the authority to legislate with respect to a given subject is conferred and the mode of its exercise is not prescribed, there goes with it the condition that the exercise thereof, to be valid and efficacious, must be reasonable, and not oppressive : 1 Dillon, Mun. Corp. (4 ed.), § 328 ; *State ex rel.* v. *Inhabitants of Trenton*, 53 N. J. Law, 132 (20 Atl. 1076); *Haynes* v. *Cape May*, 50 N. J. Law, 55 (13 Atl. 231); *Coal Float* v. *City of Jeffersonville*, 112 Ind. 15 (13 N. E. 115); *Mayor, etc.* v. *Radecke*, 49 Md. 217 (33 Am. Rep. 239); *Tugman* v. *City of Chicago*, 78 Ill. 405 ; *Kirkham* v. *Russell*, 76 Va. 956. It is for the court to determine, in view of the facts of each particular case as it arises, whether or not an ordinance is reasonable : 17 Am. & Eng. Ency. Law (1 ed.), 248.

4. The prevailing presumption, however, is in favor of its reasonableness, which must be overcome by legal and competent proof to the contrary before its invalidity can be declared : *State ex rel.* v. *Inhabitants of Trenton*, 53 N. J. Law, 132 (20 Atl. 1076) ; *Commonwealth* v. *Patch*, 97 Mass. 221 ; *Van Hook* v. *City of Selma*, 70 Ala. 361 (45 Am. Rep. 85) .

5.   We are thus brought to the question whether the ordinance involved evinces a reasonable exercise of the general police power vested in the city, or of such as is attendant upon the power accorded to provide for the health, cleanliness, and good order thereof.   The court may take judicial knowledge of the acts of incorporations and charters of municipal corporations, and, as a logical consequence, of the territorial limits of such municipalities, especially where they are fixed and defined by the acts giving them life, or acts amendatory thereof :   17 Am. & Eng. Ency. Law (2 ed.), 936, 938 ; *Fauntleroy* v. *Hannibal*, 1 Dillon, 118 (Fed. Cas. No. 4691); *Blinkert* v. *Jansen*, 94 Ill. 283 ; *Hornberger* v. *State*, 47 Neb. 40 (66 N. W. 23); *De Baker* v. *Southern Cal. Ry. Co.* 106 Cal. 257 (46 Am. St. Rep. 237, 39 Pac. 610); *City of Kansas City* v. *Smart*, 128 Mo. 272 (30 S. W. 773).

6.   Now, it is an admitted fact that there are considerable tracts of land, comprised within the limits of the city, which are sparsely inhabited.·  As was said by the court below, "there are within the corporate limits of the City of Portland several large tracts of land, which are used solely for farming purposes, some of them containing several hundred acres, and on some of them interments could be made which would be distant a half mile or more from any human inhabitant or public thoroughfare."   Under these conditions, it is assuredly not a reasonable regulation, as a police provision, or for the conservation of the health or good order of the community, to exclude burials from the whole territory, save the districts enumerated by the ordinance.   If, however, as before indicated, the legislature had granted special and express power to exclude burials from within the city limits, the adoption of such an ordinance would be a legitimate exercise thereof, and no one could question its

validity, yet, when the nature of the power delegated enjoins upon the city the duty of adopting such measures only as are reasonable, that becomes the measure and limit of the power, and any act in excess thereof is without legal efficacy. The ordinance being unreasonable as applied to those sparsely inhabited portions of the city, and general in its territorial scope and operation, it is invalid as to the whole, and must fall in its entirety. As sustaining the conclusions here reached, see *Austin* v. *Murray*, 16 Pick. 121; *Kneedler* v. *Borough of Norristown*, 100 Pa. St. 368 (45 Am. Rep. 383); *Town of Lake View* v. *Rose Hill Cem. Co.* 70 Ill. 191 (22 Am. Rep. 71); *Mayor, etc.* v. *Radecke*, 49 Md. 217 (33 Am. Rep. 239).

This statement of the law is not impinged upon by the doctrine maintained in *Pennsylvania R. Co.* v. *Mayor, etc. of Jersey City*, 47 N. J. Law, 286; *State* v. *Sheppard*, 64 Minn. 287 (67 N. W. 62, 36 L. R. A. 305), and other cases cited by counsel. One of the primary essentials of a valid ordinance is that it must be general in its operation ; that is, it must affect all persons alike, under like circumstances and conditions : 1 Dillon, Mun. Corp. (4 ed.) § 322. It may, and often does, become a question whether certain persons or corporations, acting in peculiar capacities or special emergencies, come within the legitimate purview or spirit of the ordinance, and such was the question presented and determined by the above cases. The ordinance in each case was general in its scope, affecting all persons alike, but in the first the business of the railroad concentered in a small compass, but had grown to such proportions that the ordinance became unreasonably embarrassing and burdensome, and it was held, therefore, that it should not be enforced against the company as to the particular *locus in quo.* So, in the latter case, the ordinance prohibited the driving of animals in the street at a rate of speed exceeding

six miles an hour, and it was held that a fireman, acting in the discharge of his duties in hastening to the scene of a conflagration, did not come within the inhibition. The doctrine is operative in the establishment of an exception rather than that of a general rule, and can have no application in the case at bar.

Reliance is had upon the case of *City of Portland* v. *Terwilliger*, 16 Or. 465 (19 Pac. 90), as being an adjudication sustaining the power of the city to exclude burials from within the city limits. The court there had under consideration the effect of an ordinance prohibiting the burial of the dead within the city, and consequently upon an estate conceded, for the purpose of the case, to have been vested in the municipality upon a condition subsequent as to the continued use and occupation thereof by it for cemetery purposes. The power to adopt the ordinance in that case seems to have been taken for granted, or, at least, it was not a matter of controversy in the course of the hearing. In announcing the opinion, Mr. Justice Strahan incidentally says: "That power was delegated by the state to the City of Portland under the general description of police power;" referring, we presume, to the power of prohibiting burials within the city limits. The learned justice then proceeded to an elaboration of the idea that every citizen holds his property subject to the proper exercise of the power, but the question whether the charter did or did not confer the power to adopt the ordinance was not mooted, so far as we are informed by the record, much less can it be said to have been decided. The idea of declaring the act of burial a nuisance, and the power commensurate to that particular purpose, does not seem to have been suggested at any time during the proceeding. The case is therefore not controlling as a precedent. If, however, it ever had any vitality in the direction claimed for it, it must

be considered as overruled in its general scope by the subsequent case of *Grossman* v. *City of Oakland*, 30 Or. 478 (60 Am. St. Rep. 832, 36 L. R. A. 593, 41 Pac. 5. There will be an affirmance of the judgment. .

                                                    AFFIRMED.


Decided 15 July, 1901.