Argued December 13, 1935; affirmed January 14, 1936

# HILL MILITARY ACADEMY *v.* CITY
# OF PORTLAND ET AL.

(53 P. (2d) 55)

*James West*, Deputy City Attorney, of Portland (Frank S. Grant, City Attorney, and W. W. Banks, both of Portland, on the brief), for appellants.

*John M. Pipes*, of Portland, for respondent.

BEAN, J. Defendants assign error of the court in enjoining the city of Portland from enforcing Ordinance No. 66125. Hill Military Academy is situated on lots 10, 11, 12, 13 and 14, Block 13, Goldsmith's Addition, in the city of Portland, Multnomah county, Oregon. This school is on Twenty-fourth, Marshall and Northrup streets, and consists of two buildings—one, a school

and dormitory, called the main building, numbered 2451 N. W. Marshall street, and the other, an armory, numbered 2468 N. W. Northrup street. The main building is four stories high, although the fourth story is not used. These buildings were constructed of wood, resting on masonry foundations, in 1901, by J. W. Hill, who conducted the school under the name of Hill Military Academy. In 1908 Hill Military Academy was incorporated. The buildings originally cost about $25,-000. When they were built they complied with the ordinances and regulations of the city of Portland in regard to buildings. They have been used for school purposes continuously since their erection and for no other purpose, and the evidence is that they have no value whatever for any other purpose.

When these buildings were constructed there were no houses contiguous to them, except one, which was purchased by the school. In later years the plaintiff built school buildings on Rocky Butte, which are also known as Hill Military Academy. The old buildings are now used as a school for boys under 12 years of age. After the school had been in operation for a number of years, residences were constructed on the neighboring lots, so that in time the school became the center of a residential district, which has deteriorated for residence purposes, apartment houses having encroached thereon. A number of persons, becoming dissatisfied with having the school near their property, filed a petition with the council seeking to have the school building condemned. The council inaugurated the proceedings culminating in the passage of Ordinance No. 66125 on August 23, 1934, authorizing the Commissioner of Public Works to prevent the use of both buildings for school purposes on account of the structural defects

and dilapidation and because the property constituted a fire hazard.

Defendants submit that two issues are presented: First, did the city properly exercise its police power? Second, are the conditions such as to justify the action of the city council? Plaintiff contends that the council did not pursue the legal procedure in passing the condemnatory ordinance complained of; that plaintiff was entitled to notice that its property was to be condemned and an opportunity to be heard, and did not receive such notice, and that Ordinance No. 66125 is unreasonable, oppressive and confiscatory and deprives plaintiff of its property.

The city council is authorized by the city charter, among other things, to exercise all the police power of the state within the city limits to prevent, remove and declare what shall constitute nuisances and to provide the manner of their removal. The council attempted to condemn plaintiff's property under section 580 of the building code, which is contained in Ordinance No 56439. Section 580 of the building code provides as follows:

"When any building or structure, or part thereof, including under the term 'structure' such construction as fences, towers, tanks, retaining walls, platforms, docks, etc., are in a condition which is dangerous or become in a condition which is dangerous, the Commissioner of Public Works shall notify the owner or person responsible therefor either to tear the building or structure, etc. down, or put the same in a safe condition. If no steps are taken within a reasonable time to comply with this notice the Commissioner of Public Works shall report the same to the City Council and the Council shall proceed to condemn said building or structure in

the same manner as frame buildings in the fire limits are condemned.''

Section 578 of the building code provides in part as follows:

''When any frame building, dock or structure in the first and second districts of the fire limits becomes deteriorated by use, the weather, fire or decay, or by a combination of the foregoing causes, to more than fifty per cent. the Commissioner of Public Works shall report the same to the City Council. The Council shall thereupon fix a date for a hearing thereon, cause notice thereof to be posted on said building, dock or structure, and served on the owner or person responsible therefor, said service to be by personal service of said notice, or, by mailing a copy of said notice to the last known address of the owner and by publication of said notice in the official newspaper of the City of Portland, ten days prior to the date fixed for the hearing thereof, said notice to state that condemnation proceedings have been instituted against said building, dock or structure and directing the owner to remove the same forthwith, or within a reasonable time, or in lieu thereof, to appear before the Council on the day set therefor and show cause why said building, dock or structure should not be condemned. Proof of personal service, publishing, posting and mailing of said notice shall be made by affidavit of the person or persons serving, publishing, posting and mailing the same and said affidavits shall be filed with the Auditor.

On the date fixed for the hearing the Council shall hear all parties interested therein after which it shall then determine whether or not said building, dock or structure shall be condemned, and if it determine that the same shall be condemned it shall by ordinance declare said building, dock or structure to be a nuisance, fix the time within which the owner or person responsible therefor shall abate the same, designate and direct the City Engineer to abate the same if it is not abated within the designated time.''

The only notice served on plaintiff by the city, that plaintiff's property was to be condemned, is as follows:

"July 21, 1934.

Joseph A Hill, President
  Hill Military Academy,
    Rocky Butte, Portland, Oregon.

Dear Sir:

This is to inform you that on July 26th, 1934, at 1.30 o'clock P. M. the matter of the condemnation of the old Hill Military Academy building at 2468 N. W. Northrup Street will be brought up under Section 580 of the Building Code regulating the condemnation of damaged buildings and you are hereby notified of this so that you may be present when the consideration under the building code comes up.

I am sending you a copy of the report of the Commissioner of Public Works in this matter and also a copy of the report of the Structural Engineer of the Bureau of Buildings.

Yours very truly,

Geo. R. Funk, Auditor of the City of
  Portland, By L. E. Burdick, Deputy."

■ It will be noted that this notice relates to 2468 N. W. Northrup street, which is the armory. Nothing is said in the notice about the main school building, which is 2451 N. W. Marshall street. The condemnation was to proceed under section 580 of the building code regulating the condemnation of damaged buildings. Section 580 provides that, when a building is in a dangerous condition and no steps are taken within a reasonable time after notice to fix the building, the council shall proceed to condemn it in the manner that frame buildings in the fire limits are condemned. The building code, section 578, which relates to condemnation of frame buildings in the fire limits, lays down the procedure for the condemnation of buildings that are

considered in a dangerous condition under section 580, and requires the council to fix a date for a hearing of the condemnation, cause notice thereof to be posted on the building or structure to be condemned, and a notice to be served on the owner, or person responsible therefor, and that this service be by personal service or by mailing a copy to the last known address of the owner, and by publication of said notice in the official newspaper of the city of Portland ten days prior to the date fixed for the hearing thereof, which shall state that the condemnation proceedings have been instituted against the building, directing the owner to remove the same forthwith, or within a reasonable time, or, in lieu thereof, to appear before the council on the day set therefor and show cause why the building should not be condemned. The notice received by the president of plaintiff was a five-day notice, instead of ten, assuming that it was served on July 21, the date of the notice, as the time for hearing is July 26. Five days notice does not comply with the law but it appears that Mr. Hill, president of the plaintiff, appeared at the time mentioned in the notice. The notice refers to the building at 2468 N. W. Northrup street, which is the armory, and does not refer in any way to the building at 2451 N. W. Marshall street, which is known in the record as the main building. Therefore, we think that the main building at 2451 N. W. Marshall street is virtually out of this case. It is mentioned in the ordinance condemning the two buildings, but the record does not warrant such a condemnation. Therefore, we will proceed to consider the matter of condemnation of the building at 2468 N. W. Northrup street.

■■ It is plain that the council proceded first to condemn the building as unsafe and a nuisance, and then changed and declared it a fire hazard. The notice did

not state that condemnation proceedings had been instituted or direct the owner to remove the same forthwith, or within a reasonable time, or, in lieu thereof, to appear before the council to show cause why the building should not be condemned, or that it had a right to be heard at all. The notice stated that the matter of condemnation would be brought up under section 580 of the building code relating to the condemnation of damaged buildings, and notified plaintiff that it might be present when consideration under the building code came up. It is essential to a lawful condemnation of property that the owner shall receive notice, which means that he must be notified of the time and place of the hearing, and that he shall have a right to be present and make objections. It appears that the council passed Ordinance No. 66125, condemning plaintiff's property on account of structural defects or dilapidation, without authority. Referring again to section 578, directing procedure for the condemnation of old buildings considered to be in a dangerous condition under section 580 of the building code, we find that section requires proof of service by affidavit. It is not shown that there is any proof in the record that any affidavit of service was ever made or filed with the auditor or that any notice was ever posted on the building or served on the owner, or any one else, or published as required by section 578, except as above noted. Section 578 also directs that after the hearing the council shall determine whether the building shall be condemned, and if it so determines it shall, by ordinance, declare the building to be a nuisance. No such declaration is found in Ordinance No. 66125. Section 578 also directs the time within which the owner or person responsible therefor shall abate the nuisance, and directs the city engineer to abate the same if the owner fails to do so within the

designated time. No such things were done. The provisions of sections 580 and 578 have not been complied with.

The next question is: Did the city take proper steps for the condemnation of the armory building as a fire hazard? Ordinance No. 47284, providing for protection against fire, directs, in section 24, that whenever the fire marshal, after inspecting any building, or structure in the city of Portland, finds, because of deterioration, age, lack of repair, or having therein electric wires or equipment improperly installed, electric wiring or equipment out of repair, defective chimneys, defective gas connections or appliances, defective heating apparatus, inadequate means of exit, or any other cause, all or any of which conditions present a fire hazard or render said building liable to fire, so as to endanger other buildings or property or human life from a fire in such building, said fire marshal shall notify the commissioner in charge of the Bureau of Fire of such facts as in his opinion constitute a fire hazard in said building or structure. Section 24 further provides:

"The Commissioner shall cause to be served written notice on the owner, or person responsible therefor to remove such fire hazard by rearranging, repairing, or wrecking the building, or, by repairing the equipment therein, or by changing the occupancy therein, in such a way as to remove said fire hazard. The said Commissioner shall, in said written notice, fix the time within which said owner, or person responsible therefor shall remove said hazard, or make said repairs. In no case shall the time be fixed for less than ten days. The owner or person responsible, within ten days after receiving notice, may appeal, in writing, from the order of the Commissioner in charge of the Bureau of Fire to the Council."

The ordinance further provides, among other things, that the council shall determine the appeal at its regular

meeting, and if any owner, or person responsible for the condition, of such building, whether resident or non-resident, fails to comply with the order of the commissioner to remove the hazardous fire condition in the building or structure, as directed by said commissioner, the council may order the Bureau of Fire to abate the use of the building, and to that end the commissioner shall have authority to close said building or structure and to prevent its use or occupancy until the order of the commissioner in charge of the Bureau of Fire has been complied with.

The record discloses that on June 29, 1934, the commissioner of finance, pursuant to the ordinance, sent a letter to plaintiff notifying it that the buildings owned by it at 2468 N. W. Northrup street, by reason of deterioration, age and lack of repair, were a fire hazard, and dangerous to the occupants and the surrounding property. It further notified plaintiff that said buildings must be removed within 60 days from the receipt of the notice, and further notified plaintiff that it could appeal from this order within ten days to the council. On July 5 plaintiff appealed to the council from this order. On July 14 the commissioner recommended to the council that the hearing be set for July 26 at 1:30 o'clock, and that the interested parties be notified, but plaintiff was never notified. It received no notice whatever of any time that there was to be a hearing before the council in regard to the condemnation of its property as a fire hazard. The only notice which it received was the five-day notice referred to above. This was not a notice of the hearing on plaintiff's appeal from the order declaring the property at 2468 N. W. Northrup street, the armory, to be a fire hazard, and commanding its wreckage and removal within 60 days. The notice does not contain anything about the

order of the commissioner of finance declaring the building a fire hazard.

The question arises: Can this proceeding be sustained on the theory that plaintiff waived the notice? The plaintiff's president was present at the council meeting on July 26 in response to the notice of July 21 that the condemnation of its property would be brought up under section 580 of the building code.

We believe that the condemnation of property is a proceeding in rem and that the council can not get jurisdiction of the res without complying with the law. Section 578 of the building code not only requires personal service of notice on the owner but requires that notice shall be posted on the building to be condemned. These are jurisdictional requirements and we do not think that they were waived. The council did not pursue the procedure provided in section 580, and section 578 which is by reference a part thereof. Plaintiff received the order of the commissioner of finance that its property was a fire hazard and it was ordered to remove the buildings. It was notified that it could appeal to the council. The commissioner directed the council to give the notice, but the council never did it. The contention that it did appear before the council is explained by the fact that it appeared in response to a notice given under section 580 of the building code. The plaintiff was entitled to fair notice of what was to be heard and considered. A person should not be summoned on one matter that requires notice and be proceeded against on an entirely different matter under that notice, when notice is required under both matters. Before plaintiff's property should be condemned it should at some time in the proceedings be given a notice, specifying the time and place for a hearing on the proposition of

whether its property should be condemned as a fire hazard.

■ The condemnation of property without legal notice to the owner is taking property without due process of law: *Lauderback v. Multnomah County,* 111 Or. 681, 691 (226 P. 697); *MacVeagh v. Multnomah County,* 126 Or. 417, 426 (270 P. 502); *Brown v. Silverton,* 97 Or. 441 (190 P. 971).

Fire Ordinance No. 47284 provides for the commissioner to cause written notice to be served on the owner or person responsible therefor to remove such fire hazard, but we look in vain for any notice to the owner for a hearing before the council in regard to a fire hazard, but, nevertheless, whether the ordinance provides for a notice or not, the constitution requires some sort of notice to be given to the owner of his right to be heard at some stage of the proceedings. The notice should specify the time and place of hearing: *Brown v. Silverton,* supra.

■ Ordinance No. 47284 was passed by the council June 24, 1925, known as the fire code. This ordinance did not apply in all its details to a building constructed in 1901. Municipal ordinances establishing fire limits can not be retroactive so as to require the removal of existing buildings therefrom, or, which means much the same thing, prohibit the use of the same. The city can, from time to time, compel minor improvements on old buildings and make certain regulations in regard thereto, but it can not destroy them or destroy the use thereof, unless the building in fact constitutes a nuisance. The council, by its ordinance, did not declare the armory building to be a nuisance: *Morton v. Wessinger,* 58 Or. 80, 85 (113 P. 7); *Brown v. Silverton,* supra; 43 C. J. 574, § 921. Whether the building is a fire hazard or not, within the meaning of the nuisance law,

is determined by whether the building inherently contains some defect like defective flues or defective wiring or some condition that would attract or cause fire. By Ordinance No. 66125, declaring the building a fire hazard, the council found:

"that said Hill Military Academy, a corporation, has failed to remove said fire hazard and failed to make the necessary repairs to said building requisite for safe occupancy for school purposes. The Council therefore, directs that the further use or occupancy of the building known as No. 2468 N. W. Northrup Street, situated on the real property hereinabove described, shall cease, and that the Bureau of Fire is hereby directed to abate the further use and occupancy of said building, and the Commissioner in charge of said bureau is hereby granted authority to close said building and to prevent its further use and occupancy, until such time as the Hill Military Academy, a corporation, shall repair and put in a safe condition in accordance with the Building Code, said building."

While we do not deem it absolutely necessary, we will refer to the condition of the building, as it may have a bearing on the case. It seems that the city officials are not satisfied with the armory building in its present condition and consider it a fire hazard. However, Mr. Edward A. Dunlap, deputy building inspector for the city, as a witness for the city, testified on cross-examination as follows:

"If minor repairs would be made to the posts and girders and those rotten portions of the building, and the roof supported, and the building would stand, if that work was done there would be no cause for condemnation of the building; * * *"

Horace E. Plummer, inspector of buildings for the city, as a witness for the city, testified in effect that the trusses in the armory, which he thinks are insufficient, could be repaired, and that he thought they

could be made safe without putting the whole building in repair according to the building code; that they should repair the under portions of the building, which are rather of a minor character, and that the principal cost would be bracing the trusses. There is some inclination on the part of the city authorities to require the building to be repaired in accordance with the present building code, to which we have referred. It is quite likely that, with the benefit of the advice of the city officials as contained in their testimony, the building could be repaired so that the same would be reasonably safe.

Under the procedure followed by the city in the matter of the condemnation of the buildings in question, Ordinance No. 66125, passed for that purpose, can not be sustained.

The following cases are instructive upon the questions involved: *Grossman v. City of Oakland*, 30 Or. 478 (41 P. 5, 36 L. R. A. 593, 60 Am. St. Rep. 832); *Ex parte Wygant*, 39 Or. 429 (64 P. 867, 54 L. R. A. 636, 87 Am. St. Rep. 673); *Daniels v. City of Portland*, 124 Or. 677, 684 (265 P. 790, 59 A. L. R. 512); *Why v. City of Marshfield*, 138 Or. 167 (5 P. (2d) 696).

For the reasons stated herein, the decree of the circuit court is affirmed.

CAMPBELL, C. J., and RAND and BAILEY, JJ., concur.